# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### ST. JOSEPH DIVISION

| | | |
|---|---|---|
| ANNIE JO EMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:15-06062-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Annie Jo Emery seeks judicial review of the Acting Commissioner of Social Security's ("the Commissioner's") denial of her application for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of degenerative disk disease, depression, anxiety, and post-traumatic stress disorder, but she retained the residual functional capacity to perform light work with restrictions as a collator operator, electrical assembler, and price maker.

After carefully reviewing the record and the parties' arguments, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

## Factual and Procedural Background

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application on June 11, 2012.[1]  The Commissioner denied Plaintiff's application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a video hearing, and on November 27, 2013, issued her decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on March 8, 2015, leaving the ALJ's decision as the Commissioner's final decision.  Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).  Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010).  The court may reverse the Commissioner's decision only if it falls outside of the available "zone of choice," and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact.  *Buckner*, 646 F.3d at 556.

---

[1] Plaintiff alleges she became disabled earlier, on January 30, 2011, but under Title XVI, a claimant may not receive benefits for any time period prior to filing her application.  20 C.F.R. §§ 416.330, 416.335.

**Analysis**

The Commissioner follows a five-step sequential evaluation process[2] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff contends the ALJ committed reversible error by: (1) failing to determine the effects of purportedly living in a highly structured setting upon Plaintiff's activities of daily living; and (2) giving more weight to the opinion of the consultative psychologist than to the opinions of her counselors or primary care physician. These arguments are without merit.

**I.      Plaintiff did not live in a "highly structured setting," thus the ALJ properly considered her activities of daily living.**

The ALJ found that Plaintiff did not meet Listing 12.06[3] for a disabling anxiety disorder because the medical evidence and her activities of daily living showed her symptoms were not sufficiently severe. R. at 12. Plaintiff contends the ALJ erred in considering her activities of daily living because she lived in a highly structured, supportive setting, thus her activities of daily living did not accurately depict her ability to function independently in a workplace.

---

[2] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

[3] The listings are sets of diagnostic criteria, which if met, will halt the sequential evaluation with a finding of disability at step three of the sequential evaluation process. 20 C.F.R § 416.920(a)(4)(iii). The claimant bears the burden of showing she meets each of the specific criteria in the listed impairment. *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010). "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). The medical criteria for listed impairments were intentionally set high because they end the inquiry relatively early in the sequential evaluation process. *Id.*

3

Plaintiff contends that given the level of structure and support in her home situation, the ALJ should have focused on her ability to function outside of her home.

This argument is unavailing, however, because Plaintiff did not live in a "highly structured and supportive setting" as envisioned by the regulations. In relevant part, the regulations state:

> Particularly in cases involving chronic mental disorders, overt symptomatology may be controlled or attenuated by psychosocial factors such as placement in a hospital, halfway house, board and care facility, or other environment that provides similar structure. Highly structured and supportive settings may also be found in your home. Such settings may greatly reduce the mental demands placed on you. . . . If your symptomatology is controlled or attenuated by psychosocial factors, we must consider your ability to function outside of such highly structured settings.

20 C.F.R. § pt. 404, subpt. P, app. 1. While a person's home living environment can qualify as a "highly structured and supportive" environment, the record does not establish that Plaintiff's home was so highly structured or supportive that it was akin to a mental hospital, halfway house, or board and care facility. On the contrary, the record shows Plaintiff lived in her own home with her five-year-old and twelve-year-old sons, and that she largely cared for the three of them by herself. This included washing dishes, doing much of the cooking, and doing some laundry, as well as driving the kids to school and watching them during the summer. R. at 25-26, 32-35, 140-47. Granted, Plaintiff lived close to her children's school so she did not have to drive far, and her parents lived seven miles away and helped her go shopping and cooked meals for their grandchildren if Plaintiff was not feeling up to it. R. at 32-35. But this is not enough to make Plaintiff's home situation analogous to that of residents living in a mental hospital, halfway house, or board and care facility, where patients do not care for children, cook their own meals, go shopping, or drive.

4

Because Plaintiff did not demonstrate that she lived in a "highly structured and supportive environment," the ALJ did not err in considering her activities of daily living to find she was not disabled.

## II.     The ALJ did not err in weighing the medical opinion evidence.

Plaintiff also argues the ALJ erred in weighing the medical opinion evidence. Plaintiff contends the ALJ erred by giving significant weight to the opinion of consultative psychologist Tom Bein, M.S., ("Mr. Bein") and giving little weight to the opinion of licensed professional counselor Mary Quinley, M.S. ("Ms. Quinley"). Mr. Bein opined that Plaintiff did not have any difficulty understanding and remembering simple questions or instructions, and she was able to sustain concentration and persistence on task at least during relatively short, structured situations, but she would have moderate to marked impairment in adapting to changes and stressors in her environment. R. at 13, 260. On the other hand, Ms. Quinley opined that Plaintiff had extreme social limitations. R. at 295-96. Plaintiff contends Mr. Bein's conclusions are incorrect and incomplete, and that Ms. Quinley's opinions are superior because they are based on observing Plaintiff over a longer period of time. Plaintiff also contends the ALJ erred by not mentioning the opinions of psychologist Bill Graham, Ph.D. ("Dr. Graham"), and Plaintiff's treating general practitioner, N.O. Soghrati, D.O. ("Dr. Soghrati").

In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. 20 C.F.R § 416.927(c)(2). The ALJ did that here. She gave Mr. Bein's opinion significant weight because it was consistent with Mr. Bein's notes, Plaintiff's treatment notes (which indicated Plaintiff had moderate symptoms), Plaintiff's activities of daily living, and the

effectiveness of her medications.[4] R. at 14. The ALJ assigned little weight to Ms. Quinley's opinion because her findings were inconsistent with the findings of the consultative evaluation and Plaintiff's treatment records, and because licensed counselors are not an acceptable medical source under the regulations. R. at 14; 20 C.F.R. §§ 416.913(a), 416.927(a)(2) (explaining a licensed professional counselor's opinion is not an "acceptable medical source" whose opinion must be given controlling weight, but rather is considered and weighed as a medical source). Most importantly, she rejected Ms. Quinley's conclusion that Plaintiff could not work because it appeared to be based on Plaintiff's subjective complaints which the ALJ explicitly found were not credible,[5] a finding Plaintiff does not contest. These findings are supported by the record, R. at 25-26, 32-35, 140-47, 249-55, 257-60, 294-97, thus the Court will not reverse or remand.

Finally, Plaintiff suggests that the ALJ erred because she did not "even mention" Dr. Graham's and Dr. Soghrati's treatment notes. The Court holds any error here does not justify reversal or remand. As a threshold matter, the ALJ stated that she considered all the evidence in the record, and it is well-settled that in writing her opinion the ALJ need not discuss all of the evidence found in the record. *See, e.g., Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (reiterating that the ALJ need not discuss every piece of evidence contained in the record). But in fact, the ALJ referenced Dr. Soghrati's treatment notes by exhibit number (*e.g.,* 10F)—the majority of which related to physical complaints such as sore throat, coughing, ear ache, abdominal pain and cramping, irregular bowel symptoms, back pain, and gynecological issues.

---

[4] Plaintiff makes a valid point that in reaching this conclusion the ALJ did not discuss the relative effectiveness of Plaintiff's medications over time. While the ALJ could have discussed this issue more, it had no effect on the outcome of the case and is not a basis to reverse or remand. *See Hensley v. Colvin*, No. 15-2829, — F.3d —, 2016 WL 3878219, at *4 (8th Cir. July 18, 2016) ("[A]n arguable deficiency in opinion writing that had no practical effect on the decision . . . is not a sufficient reason to set aside the ALJ's decision." (quoting *Welsh v. Colvin,* 765 F.3d 926, 929 (8th Cir. 2014))).

[5] The ALJ found Plaintiff's statements concerning the limiting effects of her symptoms were not credible because: (1) she had a poor work history which indicated poor motivation to work; (2) her statements were not supported by any treatment notes; and (3) her statements were inconsistent with her activities of daily living. R. at 13-14.

R. at 11-14, 299-315.  Similarly, in giving significant weight to Mr. Bein's opinion, the ALJ noted Mr. Bein was provided with Dr. Graham's progress notes which acknowledged that Plaintiff was taking an anti-depressant prescribed by her primary care physician, Dr. Soghrati. R. at 13-14, 249-55, 257-59.  Thus, the ALJ considered their opinions in making her decision.

More importantly, unless it had some practical effect on the outcome of the case, a deficiency in the ALJ's opinion-writing technique does not warrant remand.  *Hensley v. Colvin,* No. 15-2829, — F.3d —, 2016 WL 3878219, at *4 (8th Cir. July 18, 2016) ("[A]n arguable deficiency in opinion writing that had no practical effect on the decision...is not a sufficient reason to set aside the ALJ's decision.").  Plaintiff does not provide any explanation as to how these records are relevant or have any bearing on the ALJ's decision, or how the failure to discuss these records constitutes error.  Accordingly, there is no basis for reversal or remand here.

## Conclusion

Substantial evidence on the record supports the Commissioner's decision, and so the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:    September 21, 2016                    /s/ Greg Kays
                                              GREG KAYS, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT